IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Billy Graham, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | C/A NO.  4:07-0632-RBH |
| | ) | |
| vs. | ) | |
| | ) | |
| Sears, Roebuck and Co., | ) | **ORDER** |
| | ) | |
| | ) | |
| Defendant. | ) | |

The plaintiff filed this action in state court on December 11, 2006.  The Complaint alleges federal causes of action for sexual harassment and retaliation in violation of Title VII, 42 U.S.C. §2000e, and a state law claim for wrongful termination in violation of public policy. The defendant removed the case to this court on March 2, 2007.  Defendant filed a Motion to Dismiss the state law cause of action for wrongful termination on the basis of Fed. R. Civ. P. 12(b)(6) on March 9, 2007. The motion to dismiss does not address the Title VII claims.

This matter is now before the undersigned for review of the Report and Recommendation ("the Report") filed by United States Magistrate Judge Thomas E. Rogers, III, to whom this case had previously been assigned pursuant to 28 U.S.C. § 636 and Local Rule 73.02(B)(2)(g).  In his Report, Magistrate Judge Rogers recommends that the defendant's motion to dismiss be denied. Defendant filed objections to the Report on January 29, 2008.

In conducting its review, the Court applies the following standard:

The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of

1

the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

*Wallace v. Housing Auth. of the City of Columbia*, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

### Facts

The plaintiff alleges in his Complaint that he was terminated from his employment with the defendant at its Florence, South Carolina store on April 13, 2006. Background facts alleged in the Complaint are that the plaintiff was initially employed as a sales associate and that the store's Loss Prevention Manager, Gail Patterson, approached the plaintiff in 2002 about training him to take over her position. Patterson had been offered the position of loss prevention manager at the Myrtle Beach, South Carolina store due to the planned retirement of the loss prevention manager there. Plaintiff allegedly began working in the Loss Prevention Department in December of 2002 and was being trained by Patterson. However, in September of 2003, Patterson learned that the loss prevention manager in the Myrtle Beach store had decided not to retire and therefore, Patterson would not be able to transfer. Although not entirely clear from the Complaint, plaintiff apparently alleges that he continued to work in the loss prevention department. Plaintiff alleges that in April of 2004 he began to investigate a female manager who was a friend of Patterson for stealing merchandise from the store. Plaintiff reported his findings to a manager above Patterson because Patterson allegedly knew of the misconduct and did not investigate it. The defendant terminated the

2

manager's employment.  Patterson allegedly was enraged by the fact that the plaintiff went to her superior in making the report to management about her friend.  She then began changing plaintiff's work schedule, reducing her hours, and scheduling him for night closings.  In July of 2004, Patterson was investigated for violating store policy in connection with returning merchandise which she had purchased to the store.  She allegedly attempted unsuccessfully to have Plaintiff terminated from his employment at that time.

Plaintiff allegedly prepared an "ink tag audit" for the store, which showed losses occurring. Patterson allegedly requested Plaintiff to falsify the report to show less than a 2% rating. He allegedly refused to do so.  In February of 2005, Patterson gave Plaintiff a negative evaluation and assigned the duty of preparing the "ink tag audit" to another employee. Plaintiff alleges that he later learned that the numbers subsequently reported to the defendant had been falsified by Patterson.  He reported Patterson to the Human Resources Department.  Meanwhile, plaintiff allegedly continued to experience various adverse employment actions and was terminated on April 13, 2006.

Plaintiff's Complaint alleges as part of the background facts in paragraph 89 that "the Defendant terminated the Plaintiff in violation of a clear mandate of public policy, in retaliation for the Plaintiff's having reported unlawful behavior of his supervisor, Ms. Patterson."  In the First Cause of Action for wrongful termination in violation of public policy, the Complaint realleges the allegations of paragraphs 1-92 and further alleges in paragraph 93-95 as follows:

> 93. . .  South Carolina has expressed, as a clear mandate that theft, obtaining benefits or money through false pretenses from one's employer, and being disloyal to an employer while accepting wages for working for an employer are in violation of public policy.

3

94. The defendant terminated the Plaintiff in retaliation for the Plaintiff's refusal to engage in, allow, or further attempts to engage in theft, disloyalty to an employer, or his supervisor's attempts to obtain money or benefits through false pretenses.

95. That the defendant terminated the Plaintiff in violation of a clear mandate of public policy.

## Analysis

The defendant moves to dismiss the cause of action for wrongful termination in violation of public policy on the basis that it fails to state a claim. Plaintiff responded to the motion by contending that the determination whether a termination is in violation of a clear mandate of public policy is a jury issue and alleging "the complaint makes it sufficiently clear . . . that the allegations include a claim that Plaintiff was terminated in retaliation for his attempt to report theft, and obtaining money through false pretenses, activities which are, in most places, including South Carolina, illegal." (Docket Entry 5, p. 3). Plaintiff then identifies the larceny and breach of trust statutes and refers to Fed. R. Civ. P. 8(f), which provides that "all pleadings shall be so construed as to do substantial justice." Defendant then filed a Reply Brief in which it takes the position that Plaintiff fails to identify a South Carolina public policy that is applicable to his claim and that the plaintiff has not alleged that the employer required him to violate a criminal law.

The Magistrate Judge in his Report and Recommendation recommends a finding that the Complaint sufficiently alleges termination in violation of public policy, mainly based on the allegation that he was terminated for refusing to **engage in theft** or obtaining money by false pretenses.

Defendant filed objections to the Report on January 29, 2008. In its objections, defendant alleges that the Magistrate Judge did not apply the correct standard for a Rule 12(b)(6) motion,

4

based on *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007).[1]  Defendant further asserts that the plaintiff's allegations do not satisfy the public policy exception, since they constitute an internal complaint of misconduct, based on *Greene v. Quest Diagnostic Clinical Labs, Inc.*, 455 F.Supp.2d 483 (D.S.C. 2006).

In *Twombly*, plaintiffs brought a putative class action lawsuit under Section 1 of the Sherman Act, 15 U.S.C. § 1,[2] on behalf of the defendant company's "subscribers of local telephone and/or high speed internet services. . . from February 8, 1996 to present." *Id.*, 127 S.Ct. at 1962. The Court examined "what a plaintiff must plead in order to state a claim under §1 of the Sherman Act", noting that the costs of antitrust litigation must be considered in requiring "some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 1967.  The Court indicated that the Rule 12(b)(6) standard enunciated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that a Complaint should not be dismissed unless it appears beyond a doubt that Plaintiff can prove "no set of facts in support of his claim which would entitle him to relief", "after puzzling the profession for 50 years", has "earned its retirement."  *Twombly*, 127 S.Ct. at 1968-1969.  Instead, the court clarified the standard as being that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id.*  The Court also stated that, in applying the standards to a § 1 claim, "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made."*Id.*, 127 S.Ct. at 1965.

---

[1] *Twombly* was not cited to the Magistrate Judge.

[2] Section 1 of the Sherman Act prohibits "unreasonable restraints of trade" that are "effected by a contract, combination, or conspiracy."  *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 775 (1984).

5

The Fourth Circuit cited *Twombly* in *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007), n. 7, and noted that "[i]n the wake of *Twombly*, courts and commentators have been grappling with the decision's meaning and reach." However, the court concluded that it was not necessary for it to "delve into or resolve any such issues." The court simply refers to Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief" and which gives the defendant "fair notice of what the claim is and the grounds upon which it rests." *Anderson*, 508 F.3d at 187, citing *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007).

The Court finds that, even though the Magistrate Judge used the *Conley* "any facts" standard, the pleadings are sufficient to give the defendant notice of the claim. The Court will next examine Defendant's other objection.

Defendant contends that the public policy exception does not apply to the internal reporting of a crime within a company but only to certain situations involving reporting a crime to outside authorities. Defendant relies on *Greene v. Quest Diagnostic Clinical Labs, Inc.*, 455 F.Supp.2d 483 (D.S.C. 2006), a case which was decided at the summary judgment stage.

The public policy exception to the employment at-will doctrine applies where an employer requires an employee to violate the law and to situations where the reason for the employee's termination was itself a violation of criminal law. *Ludwick  v. This Minute of Carolina, Inc.*, 287 S.C. 219, 337 S.E.2d 213 (1985); *Garner v. Morrison Knudsen Corp.*, 318 S.C. 223, 456 S.E.2d 907 (1995). The public policy exception also extends to "violation of a clear mandate of public policy." *Culler v. Blue Ridge Elec. Coop. Inc.*, 309 S.C. 243, 422 S.E.2d 91 (1992) (holding that discharge of an employee because of his political beliefs was against public policy based upon S.C. Code

6

Ann. § 16-17-560 (1976), as amended, which states that discharging a citizen from employment on the basis of his political opinions is a misdemeanor).

In *Greene v. Quest Diagnostics Clinical Laboratories, Inc.*, United States District Judge Norton recently addressed the public policy exception in ruling on a motion for summary judgment. In *Greene*, the plaintiff was employed as a phlebotomist for the defendant. It was her understanding that, since she was not a physician, she was not allowed to enter ICD-9 codes. Plaintiff claimed that she was discharged for internally reporting other employees for entering such codes. She believed the action by the other employees violated company policy and certain state and federal laws, including unauthorized practice of medicine; fraud in dealings with publicly-funded healthcare programs under 42 U.S.C. § 1320a-7b, 1395nn(a) (2006); and the False Claims Act, 31 U.S.C. §§ 3729-3733 (2006). Judge Norton distinguished cases in which motions to dismiss had been denied based on that procedural posture and granted summary judgment to the defendant based on the fact "plaintiff in this case has not pointed to any law or other source that constitutes a clear public policy supporting the rights of employees to internally report potentially illegal conduct to their superiors." *Id.*, 455 F.Supp.2d at 490.

This Court agrees with Judge Norton's distinction between internal reporting of an allegedly unlawful activity and external reporting of an activity, such as occurred in *Evans v. Taylor Made Sandwich Co.*, 337 S.C. 95, 522 S.E.2d 350 (1999) (employee allegedly wrongfully discharged for filing a wage complaint with the Department of Labor). However, in the case at bar, Plaintiff's Complaint alleges that the defendant terminated the Plaintiff in retaliation for the plaintiff's "**refusal to engage in**, allow, or further attempts to engage in **theft**, disloyalty to an employer, or his supervisor's attempts to obtain money or benefits through false pretenses." *See Nolte v. Gibbs*

7

*International, Inc.*, 335 S.C. 72, 515 S.E.2d 101 (Ct. App. 1999) (material issues of fact existed to preclude a grant of summary judgment where accountant alleged that he was terminated for refusing to "acquiesce in" accounting practices that would violate state and federal laws.)

Therefore, the pleadings sufficiently allege that Plaintiff was being required by his employer to violate the law and the motion to dismiss this claim is denied.[3]

### Conclusion

For the foregoing reasons, the Court adopts the Report and Recommendation of the Magistrate Judge as modified herein. The defendant's motion to dismiss is **DENIED**.

**AND IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Court Judge

March 13, 2008
Florence, South Carolina

---

[3] Although the motion to dismiss is being denied as to this claim at this time, summary judgment may be appropriate, depending upon the facts adduced during discovery. The public policy exception is generally a limited exception to the doctrine of employment at will and, in the case at bar, it appears that the employer did not benefit from the alleged violations of the law which may have occurred. Most of the cases involving a recognition of the public policy exception seem to involve the employer deriving some benefit from the unlawful conduct required of the employee.

8