IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Billy Graham, ) | Civil Action No.: 4:07-cv-00632-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Sears, Roebuck and Co., ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is now before the court with the [Docket Entry 76] Report and Recommendation of United States Magistrate Judge Thomas E. Rogers, III[1] filed on February 2, 2010.[2] In his Report, the Magistrate Judge reviewed Defendant's [Docket Entry 47] Motion for Summary Judgment and recommended that the court should grant Defendant's motion. The Magistrate Judge further recommended that the court should decline to exercise jurisdiction over Plaintiff's state law wrongful termination claim. Plaintiff timely filed objections to the Report on February 8, 2010, to which Defendant replied on February 25, 2010.

**Procedural Background and Facts**

Plaintiff brought this suit against Defendant, his former employer, alleging gender discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and a state law cause of action for wrongful termination in violation of public policy. Plaintiff originally filed this suit in the Court of Common Pleas for Florence

---

[1] This matter was referred to Magistrate Judge Rogers pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C.

[2] Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." In this case, the court finds that the issues have been adequately briefed by both parties and that a hearing is not necessary.

County, South Carolina, on December 11, 2006.  Defendant subsequently removed the action to this court on March 2, 2007.

On March 9, 2009, Defendant filed its Motion for Summary Judgment.  Plaintiff opposed the motion on April 14, 2009, and Defendant subsequently filed a reply on May 1, 2009.  Also on May 1, 2009, Defendant filed its [Docket Entry 59] Motion to Strike Portions of the Summary Judgment Affidavit of Billy Graham.  Plaintiff timely opposed that motion, and Defendant filed a reply to Plaintiff's opposition.

On February 2, 2010, the Magistrate Judge entered his Report and Recommendation in this case.  Plaintiff filed his [Docket Entry 78] Objection to the Report on February 8, 2010.  Defendant then filed its [Docket Entry 80] Reply to Plaintiff's Objection on February 25, 2010.

The court notes that the facts of this case were completely and accurately set forth in the Magistrate Judge's Report and Recommendation, which this Order adopts and incorporates by reference.  Moreover, neither party objected to the Magistrate Judge's recitation of the facts in his Report, and therefore this court need not repeat the facts herein.

**Standard of Review**

The Magistrate Judge makes only a recommendation to the court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976).  The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## **Discussion**

I.  Scope and Timeliness of Charge

Defendant argued in its motion for summary judgment that Plaintiff is limited to challenging only the employment actions that occurred after July 29, 2005. However, the Magistrate Judge found that "[b]ecause Plaintiff alleged one act of harassment contributed to the hostile work environment that took place within the statutory time period, . . . the other acts of harassment related to the March 31, 2006, harassment that fall outside the statutory period are properly addressed in this action." Report [Docket Entry 76] at 13. Defendant did not object to the Magistrate Judge addressing "the other acts of harassment" in his Report.[3] Accordingly, the court has reviewed the face of the record for clear error, and finds none. *See Diamond*, 416 F.3d at 315. Therefore, the court hereby adopts the Magistrate Judge's recommendation that these other acts should be properly considered in this action.

---

[3] The court notes that Defendant did not file any objections to the Magistrate Judge's Report and Recommendation. Rather, Defendant chose only to file a reply to Plaintiff's objections.

II.   Sex (Gender) Discrimination

Defendant argued in its motion for summary judgment, and the Magistrate Judge ultimately agreed, that there can be no inference of unlawful discrimination in this case because "store manager Bob Young and Human Resources Consultant Michelle McMeins made the decision to terminate Plaintiff's employment and there is no evidence in the record that either Young or McMeins displayed any discriminatory animus towards Plaintiff." Report [Docket Entry 76] at 15.  In finding that Plaintiff failed to establish a case of discrimination under either the mixed-motive method or the *McDonnell Douglas* burden-shifting analysis, the Magistrate Judge stated that, "regardless of the standard of proof utilized, the gender animus must still come from a relevant decisionmaker.  Here, the relevant decisionmakers were Young and McMeins, not Patterson." *Id.* at 20 n.6.

In his objections, Plaintiff once again argues that the decision to terminate Plaintiff was based upon the actions of Patterson, his immediate supervisor, and because Patterson made several discriminatory comments relating to men throughout Plaintiff's employment, Plaintiff contends this creates an inference of discrimination.  The court disagrees.  Plaintiff has not set forth any evidence, in his objections or otherwise, tending to show that anyone other than Young and McMeins participated in the decision to terminate Plaintiff's employment.  Rather, the record shows that Young, upon learning of the incident in question, conducted his own thorough and independent investigation, obtained written statements from all witnesses of the incident, and then made an independent determination that Plaintiff had violated Sears' Workplace Violence Policy.  Moreover, there is evidence that Young contacted McMeins, a Human Resources Consultant, and sought her guidance on the issue.  After reviewing all the written

statements obtained by Young, McMeins agreed with Young that Plaintiff had violated the Workplace Violence Policy. It was only after this thorough and independent investigation that Young terminated Plaintiff's employment. Based on this evidence, the court agrees with the Magistrate Judge that Patterson had no role in the decisionmaking process regarding Plaintiff's termination, and that the only two decisionmakers were Young and McMeins. The evidence tends to show that Patterson acted only as the complaining employee. Moreover, Plaintiff has not provided any evidence to show that Young or McMeins exhibited any gender animus towards him. *See Hill v Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 287 (4th Cir. 2004) ("Regarding adverse employment actions, an employer will be liable not for the improperly motivated person who merely influences the decision, but for the person who in reality makes the decision."). As a matter of fact, Plaintiff admitted that he did not believe Young discriminated against him on the basis of sex.[4] Accordingly, the court agrees with the Magistrate Judge that summary judgment is appropriate as to this claim.[5]

Additionally, the Magistrate Judge found that assuming, *arguendo*, Plaintiff had established a *prima facie* case of discrimination,[6] Plaintiff had failed to set forth evidence that Defendant's stated reason for Plaintiff's termination–the violation of Workplace Violence Policy–was merely pretext for discrimination. Report [Docket Entry 76] at 18. The Magistrate

---

[4] Plaintiff, responding to a question during his deposition, stated the following: "No, I don't say [Young] discriminated on me by sex, no." Plf's. Depo. [Docket Entry 48, Attach. 7] at 9.

[5] The Magistrate Judge found that because Patterson was not involved in the decisionmaking process, and Young and McMeins exhibited no gender animus towards Plaintiff, Plaintiff had failed to establish a *prima facie* case of discrimination under *McDonnell Douglas* and could not establish a case of discrimination under a mixed-motive theory. Report [Docket Entry 76] at 17-20.

[6] For reasons set out above, the court finds that Plaintiff did not establish a *prima facie* case of discrimination.

5

Judge, citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208 (4th Cir. 2007), held that "to establish pretext, Plaintiff must present evidence, not that the loud, confrontational, unprofessional behavior [by Plaintiff] did not occur, but that Young did not believe that it occurred." Report [Docket Entry 76] at 19. Plaintiff fails to set forth such evidence in his objections. Rather, Plaintiff incorrectly contends that Defendant's reasons were pretext for discrimination because Young knew, or should have known, that the proffered reasons for Plaintiff's discharge were "wholly untrue." This argument is entirely unsupported by the evidence in this case. There is no evidence in the record that Young had reason to know that Plaintiff's alleged actions were untrue, especially given Young's very thorough, independent investigation into the alleged incident. Accordingly, Plaintiff has failed to show that Defendant's proffered reasons for Plaintiff's termination were pretext for discrimination.

Finally, Plaintiff cites *Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325 (4th Cir. 2003), in his objections and argues that Defendant can be held liable for any gender bias or animus on the part of Patterson. However, upon review, this court finds that the *Ocheltree* case is not applicable to this claim. Rather, that case sets forth the standard to be applied in hostile work environment claims. Accordingly, the *Ocheltree* case provides no support for Plaintiff's gender discrimination claim. For the reasons stated above, the court finds that summary judgment is appropriate as to Plaintiff's gender discrimination claim.

III. <u>Sex Harassment / Hostile Work Environment</u>

The Magistrate Judge also recommended summary judgment as to Plaintiff's hostile work environment claim. Plaintiff objected to this recommendation. To prove a hostile work environment, Plaintiff must show that: (1) he was harassed because of his sex, (2) the harassment

was unwelcome, (3) the harassment was sufficiently severe or pervasive to create an abusive working environment, and (4) some basis exists for imputing liability to the employer. *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007). After review, the court finds itself in agreement with the Magistrate Judge that summary judgment is appropriate as to this claim.

As an initial matter, the court finds that the conduct in question was unwelcome, as Plaintiff complained about the conduct on several occasions. Next, as to the particular discriminatory statements made by Patterson, there is no question that a reasonable jury could find that those statements were "because of" Plaintiff's gender.[7] However, the court agrees with the Magistrate Judge that there is no indication in the record that the other incidents complained of by Plaintiff are because of Plaintiff's sex. These other incidents include Patterson failing to approve Plaintiff's leave, giving Plaintiff an evaluation Plaintiff was not satisfied with, and disciplining Plaintiff for failing to work a shift when scheduled. Plaintiff fails to specifically address this finding in his objections. While Plaintiff once again reiterates the specific derogatory statements made by Patterson that the court has already found to be "because of" his sex, Plaintiff fails to mention any of the other incidents specifically excluded from the Magistrate Judge's analysis. *See* Obj. [Docket Entry 78] at 8. The closest that Plaintiff comes to objecting to the Magistrate Judge's exclusion of these other incidents is when he states in a conclusory fashion that "Mr. Graham clearly establishes that the complained of conduct was based on his gender." *Id.* However, such a non-specific and conclusory objection fails to direct the court to any specific error made by the Magistrate Judge. *See Orpiano*, 687 F.2d at 47.

---

[7] For example, Patterson stated that "no damn fucking man [was] going to run [her] Loss Prevention office." Plf's Aff. [Docket Entry 54, Attach. 1] at 2.

Accordingly, finding no clear error on the face of the record, the court adopts the Magistrate Judge's recommendation that these other incidents are not "because of" Plaintiff's sex and should be excluded from the hostile work environment analysis.

Plaintiff also objects to the Magistrate Judge's recommendation that the conduct complained of is not sufficiently "severe or pervasive" to establish a hostile work environment claim. Plaintiff argues in his objections that "a reasonable fact finder could most certainly conclude that, because of the complained of gender-based comments by [Patterson] and the complained of incidents, Mr. Graham's workplace had become 'hellish' for him." Obj. [Docket Entry 78] at 8. However, upon review, the court agrees with the Magistrate Judge that the evidence in this case is not sufficiently "severe or pervasive" to establish a hostile work environment. In the case at bar, Plaintiff complains of only a handful of objectionable comments made by Patterson. Moreover, these comments are spread out over the course of three years. Based on the infrequency of these comments, the court agrees with the Magistrate Judge that these comments describe, at most, a "limited number of incidents that are more reflective of run of the mill uncouth behavior than an atmosphere permeated with discriminatory ridicule and insult." *Racicot v. Wal-Mart Store, Inc.*, 414 F.3d 675, 678 (4th Cir. 2005). Accordingly, summary judgment should be granted as to this claim.

IV.    <u>State Law Claim for Wrongful Termination in Violation of Public Policy</u>

The Magistrate Judge recommended that the court decline to exercise supplemental jurisdiction over the state law claim for wrongful termination in violation of public policy. To further confuse the matter, both parties brief and argue this state law claim as if it were before the court based upon supplemental jurisdiction under 28 U.S.C. § 1367. Apparently all the

lawyers and Magistrate Judge missed the boat on this jurisdictional issue. They all apparently thought this case was originally filed in federal court. A review of the docket indicates that on March 2, 2007, this case was removed to this court on the basis of diversity jurisdiction, under 28 U.S.C. § 1332(a) and (c), and federal question jurisdiction, under 28 U.S.C. § 1331. Therefore, this cause of action is a claim over which this court has original jurisdiction on the basis of diversity under § 1332. This court cannot decline to exercise jurisdiction, nor does it have before it any basis to remand the claim to state court. Accordingly, it's left to analyze the motion for summary judgment with regard to the pending state law claim over which it has diversity jurisdiction.

This court originally entered an order denying a 12(b)(6) motion to dismiss the state law wrongful termination claim. *See* Order [Docket Entry 17]. However, in that order, the court noted its agreement with *Greene v. Quest Diagnostic Clinical Labs, Inc.*, 455 F. Supp. 2d 483 (D.S.C. 2006), and Judge Norton's distinction between internal reporting of an alleged unlawful activity and external reporting of an alleged activity. The court also noted in that order that Plaintiff alleged in the Complaint that Defendant had terminated Plaintiff in retaliation for Plaintiff's "refusal to engage in . . . theft . . . ." The court further noted *Nolte v. Gibbs International, Inc.*, 515 S.E.2d 101 (S.C. Ct. App. 1999), where an accountant had alleged he was fired for refusing to acquiesce in accounting practices that violated state and federal laws. Finally, in a footnote, this court explained that the 12(b)(6) motion to dismiss was being denied, but that summary judgment might be appropriate and stated the following:

> The public policy exception is generally a limited exception to the doctrine of employment at will and, in the case at bar, it appears that the employer did not benefit from the alleged violations of the law which may have occurred. Most of the cases involving a recognition of the public policy exception seem to involve

9

> the employer deriving some benefit from the unlawful conduct required of the employee.

Order [Docket Entry 17] at 8 n.3.

The deposition of Plaintiff indicates that Plaintiff refused to engage in theft. Plaintiff alleges that Patterson, his immediate supervisor, instructed Plaintiff to falsify his audit findings so that Patterson would receive a percentage increase in her salary, and Plaintiff refused. And further, Plaintiff investigated the alleged falsified reports and determined they had been falsified and altered by Patterson. Plaintiff further alleges he elected to report the alleged criminal activity to the store manager instead of engaging in the criminal activity himself, and he was ultimately terminated.

First and foremost, inasmuch as Plaintiff's allegations stem from any alleged retaliation due to Plaintiff's internal reporting of the criminal activity, such claims do not fit within the limited public policy exception. *See Greene*, 455 F. Supp. 2d 483. Therefore, summary judgment should be granted as to all of Plaintiff's claims that are based on retaliation due to his internal reporting of the alleged criminal activity. Second, Plaintiff's allegations regarding the falsification of ink tag audits are certainly not typical of the limited public policy exception under South Carolina state common law. Under these facts and viewing the evidence in the light most favorable to Plaintiff, it is difficult to comprehend how the employer would benefit from requiring Plaintiff to falsify the reports. Arguably, Patterson, an employee-supervisor, might benefit, but certainly not the employer–Sears, Roebuck and Co.–who would have to pay the increased salary. In essence, Plaintiff argues that Defendant fired Plaintiff because Plaintiff refused to steal from Defendant. Plaintiff appears to improperly equate Patterson with the employer, Defendant. In this wrongful termination claim, Defendant was Plaintiff's employer.

Patterson was merely another employee of Defendant and happened to be Plaintiff's immediate supervisor. Under the circumstances presented, Patterson intended to benefit to the direct detriment of Defendant. Therefore, it was Patterson, not Defendant, asking Plaintiff to engage in criminal activity. Moreover, as noted on page (5) of this Order, Patterson was not the decisionmaker in Plaintiff's termination. Rather, Patterson merely complained to the store manager, Young, who ultimately made an independent decision to terminate Plaintiff's employment based on Plaintiff's violation of Sears' Workplace Violence Policy. Accordingly, the facts as presented in this case do not fit within the public policy exception under South Carolina common law. The public policy exception "generally applie[s] in a situation in which *an employer* requires an employee to violate a law, or when the reason for termination is itself a violation of criminal law." *Barron v. Labor Finders of S.C.*, 682 S.E.2d 271, 273 (S.C. Ct. App. 2009). In the case at bar, not only did Defendant, Plaintiff's employer, not ask Plaintiff to violate the law, but Plaintiff admits in his Complaint that when Plaintiff reported the falsification of the ink tag audits to Defendant's management, they informed Plaintiff not to falsify the audits. Compl. [Docket Entry 1, Attach. 1] at 9. Additionally, when Plaintiff was asked during his deposition if anyone directed him to engage in any theft or allow theft, Plaintiff answered, "Not to no theft, no." Plf's Depo. [Docket Entry 48, Attach. 9] at 26. This court, sitting in diversity, has to try to follow existing South Carolina common law and not expand it. That is a job for the South Carolina state courts. Again, the court is unaware of any authority supporting such a claim with similar facts. Accordingly, summary judgment should be granted as to Plaintiff's state law wrongful termination claim.

**Conclusion**

The court has thoroughly reviewed the Report, objections, memoranda, and applicable law. For the reasons set forth above and by the Magistrate Judge, the court overrules all of Plaintiff's objections and adopts as modified and incorporates by reference the Report and Recommendation of the Magistrate Judge. Defendant's Motion for Summary Judgment is hereby **GRANTED** in its entirety. Plaintiff's case is **DISMISSED** *with prejudice*. Additionally, all other pending motions are deemed **MOOT**.

**IT IS SO ORDERED.**

                                                  s/R. Bryan Harwell
                                                  R. Bryan Harwell
                                                  United States District Judge

March 19, 2010
Florence, South Carolina